# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> BRADLEY WINTERS, <br><br> Defendant. | No. CR23-3032-LTS-KEM <br><br> **ORDER ON REPORTS AND RECOMMENDATIONS** |

## I. INTRODUCTION

This case is before me on two Reports and Recommendations (R&Rs) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Bradley Winters' motions (Docs. 180, 301) to suppress. Docs. 303, 304. Winters, appearing pro se, has filed timely objections (Docs. 311, 312). Oral argument is not necessary. *See* Local Rule 7(c).

## II. BACKGROUND

On October 19, 2023, a four-count indictment (Doc. 3) was returned charging Winters with conspiracy to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846 and 851 (Count 1), and possession with intent to distribute and aiding and abetting the possession with intent to distribute a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 851 and 18 U.S.C. § 2 (Counts 2-4). The charges stem from conduct that allegedly occurred between July 1 and July 12, 2023, when the Government claims a confidential informant purchased methamphetamine totaling 112 grams from Winters. Doc. 63-1 at 1; Doc. 70 at 1.

Winters first moves to suppress evidence stemming from his July 26, 2024, arrest. Doc. 180. Judge Mahoney conducted a suppression hearing on December 30, 2024.[1] Judge Mahoney considered the following evidence in her R&R:

> Testimony from Officer Samantha Pedelty, Clear Lake Police Department;
>
> Exhibit A (Doc. 258-1)—dispatch reports from Clear Lake Police Department;
>
> Exhibit B (Doc. 258-2)—officer reports from Clear Lake Police Department;
>
> Exhibit C—video from Officer Jettika Kober's body camera;
>
> Exhibit D—video from Officer Pedelty's body camera;
>
> Testimony from Deputy Frank Hodak, Cerro Gordo County Sheriff's Office (pretrial violation hearing on October 8, 2024) (Doc. 172).

Doc. 303 at 1.

Winters further moves to suppress evidence obtained from search warrants purportedly issued on July 24, 2023 (for Facebook records); August 7, 2023 (tracking device); and August 24, 2023 (cell phone contents). Doc. 301.

Judge Mahoney filed the R&Rs on January 31, 2025. Docs. 303, 304. Trial is scheduled to begin March 24, 2025.

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

---

[1] The hearing transcript is available at Doc. 263.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

### A. *Motion to Suppress Evidence Stemming from Winters' July 26, 2024, Arrest (Doc. 180)*

#### 1. *Relevant Facts*

Section I of the R&R contains the following findings of fact:

> On July 26, 2024, Officer Pedelty responded to a complaint made to dispatch about a motorcycle with high handlebars driving down the middle of the road and swerving in and out of traffic that had parked at Dollar General. Officer Pedelty went to the Dollar General and saw two motorcycles parked beside each other—one had high handlebars and the other was dark gray without high handlebars. Officer Pedelty ran the

3

license plates of both motorcycles. The license plate for the dark gray motorcycle came back to a red motorcycle last registered to Gary Winters (the Co-Defendant in this case, referred to as Gary to avoid confusion). Officer Pedelty saw two men start to walk out of the Dollar General, whom she believed to be together. The first man (later identified as the driver of the motorcycle with high handlebars) approached and spoke to Officer Pedelty while the second male "ducked back inside the store. Officer Pedelty spoke with the first male (he denied being with the second male) and allowed him to leave.

Officer Pedelty received information from dispatch that Winters might be the driver of the second motorcycle (with the plate belonging to Gary) and that he had an active arrest warrant.[2] Officer Pedelty had learned a couple days prior, through briefings and a bulletin that contained his photograph, that Winters had an active arrest warrant.

Officer Pedelty saw Winters exit the Dollar General approximately two minutes later, having removed a sweatshirt and a hat she had seen him wearing earlier when he ducked back into the store. *See* Ex. D at 6:20. Winters turned away from Officer Pedelty and walked away "briskly" before he started jogging. Based on her experience in law enforcement, Officer Pedelty believed [Winters] was trying to evade her.[3]

Winters went around the corner of the building and from there, Officer Pedelty saw him running away. *See* Ex. D at 6:48. She followed him and yelled his name multiple times but he kept running. Officer Pedelty followed Winters as he ran through a mobile-home park and crossed a fence line before crouching down in a thicket of bushes along the fence line. Officer Pedelty drew her firearm and told Winters to show her his hands and to not move. Winters instead stood up, crossed the fence line, and went back into the mobile-home park. Officer Pedelty followed and tackled Winters to the ground, where she wrestled with him to try and get his hands

---

[2] Deputy Hodak heard dispatch provide information about the license plate for Gary Winters. Deputy Hodak knew that Gary Winters was not driving the motorcycle because he was in custody. Deputy Hodak also knew that Defendant had an active arrest warrant and informed dispatch that it might be Defendant driving the motorcycle (and not Gary).

[3] Officer Pedelty later recounted Winters' suspicious behavior. Ex. D at 26:50-27:01.

4

behind his back.[4] Winters refused Officer Pedelty's commands and when she stood up, Winters ran away from her. Officer Pedelty warned Winters several times that she would spray him with OC[5] spray. Winters stopped, turned around, and stepped toward Officer Pedelty and she sprayed him with OC spray. Winters took off running again and disobeyed Officer Pedelty's commands to stop.

A second officer (Officer Kober) arrived as Winters was going back through the trailer park.[6] Officer Kober saw Officer Pedelty yelling at Winters as he moved away from her. *See* Ex. C at 35:39. Officer Kober got out of her vehicle and yelled for Winters to get on the ground multiple times. Winters turned and said "don't make me shoot you" while his hand was behind his back. Officer Kober drew her taser and Officer Pedelty drew her firearm. They told Winters multiple times to show them his hands and to get on the ground. Winters kept backing away from the officers, saying "I have a gun" with his hand still behind his back. Winters did not follow the officers' commands and started to turn. Officer Kober yelled that he (Winters) had a gun and then yelled he did not have a gun. *See* Ex. C at 23:00. Winters took off running, again, and Officer Kober deployed her taser; Winters fell to the ground. *See* Ex. C at 23:10. The officers were still not able to handcuff Winters as he struggled against them. Officer Kober tased Winters additional times, and a third officer and then a fourth officer arrived on scene. Two officers were on top of Winters, who kicked at officers and continued to resist being handcuffed. *See* Ex. C at 27:35 (officer radioing that Winters was "not in custody yet"). After several minutes (and a fourth officer arriving), officers were eventually able to handcuff Winters in front. *See* Ex. C at 27:44.

Officers were concerned Winters had a weapon (in particular a gun in the waistband of his pants), and he continued to actively struggle against the officers even though handcuffed. Officers patted Winters down while he was still prone on the ground, and Officer Pedelty noticed there was

---

[4] During the scuffle, it appears Officer Pedelty's body camera fell off of her uniform and remained on the ground until she later retrieved it. Ex. D (from 7:40 to 18:50). By the time Officer Pedelty retrieved her camera, Winters was in custody and other officers were present.

[5] Oleosorin capsicum ("pepper").

[6] Officer Kober's involvement in this incident does not begin until approximately 20:50 into her body camera video (Exhibit C). Her approach of Winters started at approximately 22:30 into the video.

something in Winters's crotch area. *See* Ex. C at 28:50. Officers found a black case that was sewn into Winters's pants. *See* Ex. C at 29:30. Officers were eventually able to check the bag and found it contained suspected methamphetamine (later weighed as 109 grams). See Ex. C. at 31:00. Officers then rolled Winters over (he continued to yell and struggle) and tried to continue searching his pants area for a weapon. *See* Ex. C at 32:05 (officer telling Winters they were looking for his gun). Officer Pedelty then found a knife in Winters's pants, and an officer also found a used methamphetamine pipe and additional methamphetamine (later weighed as 2 grams) in Winters's pocket. After officers finished searching for weapons, they stood Winters up. *See* Ex. C at 32:42.

Deputy Hodak arrived on the scene and positively identified Winters. After a medical check, Winters was booked into the Cerro Gordo County Jail on the federal arrest warrant and state charges related to resisting arrest and assaulting an officer, as well as drug and paraphernalia charges.

Doc. 303 at 1-4.

Winters' primary factual objection is that Pedelty lied in her testimony because he claims that the bulletin and briefings could not have happened "several days prior to July 26, 2024[.]" Doc. 312 at 4. He argues that Hodak was advised by the Clear Lake Police Department that they were not aware of the bulletin "in regards to Bradley Winters and the warrant," thus meaning Pedelty lied about how she was aware of Winters' federal arrest warrant. *Id.* I have reviewed Pedelty's testimony and the statement she filed after Winters' arrest and find her testimony to be credible. Doc. 263 at 7-48; Doc. 258-2 at 5-13. Winters' objection that Pedelty lied in her testimony at the suppression hearing, thus making Judge Mahoney's factual findings incorrect, is overruled. Because Winters' factual objection is overruled, I will incorporate Judge Mahoney's findings of fact from the R&R herein and reference them as necessary in my discussion of Winters' legal objection.

### 2. *Winters' Legal Objection*

Winters objects to Judge Mahoney's finding that he had no reasonable expectation of privacy in his license plate, and thus Pedelty did not violate any rights by conducting a license plate check. Doc. 301 at 5. Winters argues that the initial complaint that led to Pedelty conducting a license plate check referred only to an unrelated motorcycle and thus did not give Pedelty permission to check Winters' license plate. Doc. 312 at 5. Regardless of whether the initial complaint about erratic driving referenced Winters' motorcycle, binding Eighth Circuit precedent is clear that Winters has no reasonable expectation of privacy in his license plate. *United States v. Sparks,* 37 F. App'x 826, 829 (8th Cir. 2002). As such, Pedelty did not violate Winters' rights by checking his license plate.

Winters does not advance specific arguments regarding Judge Mahoney's additional findings that officers had reasonable suspicion to stop Winters, officers had probable cause to arrest Winters based on an active arrest warrant and that officers could search Winters for weapons. Doc. 303 at 5-7. However, because Winters objected to the R&R in its entirety, I have conducted a thorough de novo review of the R&R's legal findings and entirely agree with these findings. Winters' objections to the R&R (Doc. 303) are **overruled**.

### B. *Motion to Suppress Search Warrants (Doc. 301)*

Winters objects to Judge Mahoney's finding that his motion to suppress evidence obtained from search warrants purportedly issued on July 24, 2023 (for Facebook records); August 7, 2023 (tracking device); and August 24, 2023 (cell phone contents) was untimely. Doc. 304. Winters' motion to suppress is based on supposedly new information he received after a December 19, 2024, records request. *Id.* at 1. This evidence relates to Counts 1 through 3 of the Superseding Indictment. Judge Mahoney correctly notes that the deadline for filing pretrial motions for these counts expired on May 13, 2024. *Id.* I also previously ruled that "Winters was provided discovery and

7

does not have an adequate explanation for delaying his review of that discovery." Doc. 268 at 3. I agree with Judge Mahoney that the "new" information Winters received does not justify filing an untimely motion to suppress. Winters' objections are **overruled.**

## V. CONCLUSION

For the reasons stated herein, Winters' objections (Docs. 311, 312) are **overruled** and the Reports and Recommendations (Docs. 303, 304) are hereby **accepted** in their entirety. As a result, the motions (Docs. 180, 301) to suppress are both **denied**.

**IT IS SO ORDERED** this 25th day of February, 2025.

_____
Leonard T. Strand
United States District Judge